*In re* APPORTIONMENT OF DELTA COUNTY BOARD OF
COMMISSIONERS—1982

Docket No. 61566. Submitted January 22, 1982, at Lansing.—Decided
February 10, 1982.

Grace Roy, a registered voter of Delta County, filed a petition for
review in the Court of Appeals, contending that the Delta
County Apportionment Commission did not apportion the
County of Delta into commissioner districts of nearly as equal
population as is practicable, in violation of the Equal Protec-
tion Clauses of the United States and Michigan Constitutions
and seeking an order to reapportion the county into districts of
more equal population. *Held:*

The plan adopted by the Delta County Apportionment Com-
mission does not meet the requirements of the laws of Michi-
gan. The statute providing for apportionment of county com-
missioner districts clearly states that the division or combina-
tion of parts of political subdivisions must give way and be
governed by the higher principle of districts of equal popula-
tion. The cause is remanded to the Delta County Apportion-
ment Commission with express instructions to adopt a new
plan in accordance with the Court of Appeals opinion and the
provisions of the statute and further to submit the new plan to
the Court of Appeals for review within ten days of the date of
this opinion.

Remanded.

COUNTIES — COMMISSIONERS — APPORTIONMENT — EQUAL POPULATION
DISTRICT — CONSTITUTIONAL LAW.

Division or combination of parts of political subdivisions must
give way and be governed by the higher principle of equal
population districts in the apportionment of county commis-
sioner districts.

*Davis & Olsen Law Office,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTE
25 Am Jur 2d, Elections §§ 12-13, 16 *et seq.*

*Butch, Quinn, Rosemurgy, Jardis & Valkanoff, P.C.,* for defendant.

Before: DANHOF, C.J., and BRONSON and CYNAR, JJ.

PER CURIAM. Commencing with *Mahan v Howell*[1] the United States Supreme Court distinguished dual constitutional standards in apportionment reviews. Congressional apportionment is governed by Art I, § 2 of the United States Constitution, and requires a good-faith effort to achieve absolute population equality in the drafting of congressional districts. On the other hand, legislative bodies within the states are governed by the Equal Protection Clause of the Fourteenth Amendment which permits more flexibility of the constitutional principle of equality among election districts.

The Court went on to hold:

"The policy of maintaining the integrity of political subdivision lines in the process of reapportioning a state legislature, the policy consistently advanced by Virginia as a justification for disparities in population among districts that elect members to the House of Delegates, is a rational one. * * * The population disparities that are permitted thereunder result in a maximum percentage deviation that we hold to be within tolerable constitutional limits."[2]

---

[1] 410 US 315, 329; 93 S Ct 979; 35 L Ed 2d 320 (1973).

[2] *Ibid.* But see *Connor v Finch,* 431 US 407; 97 S Ct 1828; 52 L Ed 2d 465 (1977), where the Court struck down a court ordered plan for the Mississippi Legislature holding that a state's desire to protect the integrity of political subdivisions or historical boundary lines permits only minor deviations from legislative districts of equal population. Here the maximum deviation struck down was 16.5% in senate districts and 19.3% in house districts. In *Mahan,* the deviation was 16.4%.

The Delta County Apportionment Commission argues that, because of this development of a dual standard, the previous opinions of this Court are no longer valid law because they lack the "flexibility" now read into the application of the Fourteenth Amendment as applied to the states in local apportionment matters. However, this Court was not applying the Fourteenth Amendment; this Court was interpreting a state statute[3] which attempted to codify and enforce the constitutional principle of one person, one vote on county boards of commissioners.

When this Court interpreted the intent of the Legislature in adopting the statute in its opinion in *Apportionment of Ionia County Board of Comm'rs—1972*,[4] we indeed quoted as enlightening and sound the language of the United States Supreme Court:

"In *Avery v Midland County,* the United States Supreme Court clearly stated: 'The conclusion of *Reynolds v Sims* was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. Today we hold only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government * * *'."[5]

We immediately went on to state that the statute required more:

"Section 4 of the act providing for apportionment of boards of commissioners clearly states that the division or combination of parts of political subdivisions must

---

[3] 1966 PA 261 (as amended by 1969 PA 137); MCL 46.401 *et seq.;* MSA 5.359(1) *et seq.*

[4] 39 Mich App 676, 683; 198 NW2d 2 (1972).

[5] *Ibid.* (footnotes omitted).

give way and be governed by the higher principle of districts of equal population."[6]

Admittedly, this Court relied upon United States Supreme Court opinions prior to *Mahan* to assist it in interpreting a state statute, not to apply the Fourteenth Amendment in a vacuum. Consequently, we hold that the previous opinions of this Court on the interpretation of the county apportionment statute are still valid and binding on the county apportionment commissions. We hold that the detailed methodology of the statute makes mathematical exactness workable and required.[7]

All *Mahan* means in the State of Michigan is that the Equal Protection Clause of the Fourteenth Amendment as now interpreted does not preclude the Michigan Legislature from amending the county apportionment statute to provide for less mathematical exactness and more flexibility. In short, the argument of the Delta County Apportionment Commission should more properly be addressed to the Michigan Legislature.

The merits of this review present nothing novel. The commission considered a total of seven plans of five or seven districts with population variance ratios ranging from 1:1.0017 (5 districts) to 1:1.0310 (also 5 districts).[8] The plan adopted was

---

[6] *Ibid.*

[7] When we interpreted the methodology of the statute in our *Ionia* opinion we stated: "Furthermore, if through the use of the combining of enumeration districts, the Ionia County Apportionment Commission still cannot reach population equality, they must go on to the next logical step required under the statute—that is, *take actual counts to divide the census units." Id.,* 684-685 (emphasis supplied). We know of no federal court opinion or state law which demands so much in its quest for population equality that it requires the division of a census unit by actual count split-off to meet the statutory mandate of districts "as nearly of equal population as is practicable".

[8] The adopted plan has a population spread of 239. The 5-member plan with the lowest PVR has a population spread of 13.

the plan with the highest PVR. The record is clear and the commission admits in its response that the reason they adopted the plan with the poorest PVR was because it split no townships, and the reason they rejected the plan with the best PVR was because, out of a total of 14 townships in the county, it split three once and one twice. Our opinion in *Ionia* quoted above is still dispositive here. The commission could not under the statutory language choose to achieve township inviolability over districts of equal population.

The commission evidenced a lack of good-faith effort to achieve population equality when, at their very first meeting, a majority indicated they would not consider "zero deviance" among district populations as their primary goal.

We find the plan adopted by the Delta County Apportionment Commission does not meet the requirements of the laws of this state. We declare the plan in violation of 1966 PA 261 (as amended) and void. We remand the cause to the Delta County Apportionment Commission with express instructions to adopt a new plan in accordance with this opinion and the provisions of 1966 PA 261 (as amended), and further to submit the new plan to this Court for review within ten days of the date of this opinion.

Remanded.