*In re* APPORTIONMENT OF CLINTON COUNTY—1991
(AFTER REMAND)

Docket No. 145250. Submitted March 2, 1992, at Lansing. Decided March 9, 1992, at 9:00 A.M. Leave to appeal denied, 439 Mich 975.

James L. Sjoberg and Robert S. Varner petitioned the Court of Appeals to review the apportionment plan for Clinton County commissioner districts that had been adopted by the Clinton County Apportionment Commission. The Court, retaining jurisdiction, struck down the plan initially adopted as being violative of the statutory contiguity requirement because one district consisted of several townships, two of which touched only at a corner, and remanded the matter to the apportionment commission for adoption of a new plan, to be submitted to the Court within ten days. On January 31, 1992, the apportionment commission adopted a plan that divided the county into seven districts with a maximum population variation of 3.4 percent and required that two townships be divided between two districts each and one township be divided among four districts. Petitioners advocate a competing plan, which they had presented to the commission on remand, that also divided the county into seven districts, but that divided five townships between two districts each and had a claimed maximum population variation of 1.7 percent.

After remand, the Court of Appeals *held:*

The January 31, 1992, apportionment plan adopted by the Clinton County Apportionment Commission is constitutional, complies with the state statutory scheme, and becomes the official apportionment plan for the Board of Commissioners of Clinton County until the next official decennial census figures are available.

1. There is no proof, other than the petitioners' naked claim, that the four-way division of DeWitt Township accomplishes

REFERENCES

Am Jur 2d, Elections §§ 17, 18, 31.

See the Index to Annotations under Elections and Voting; One Man One Vote Rule.

any partisan political advantage. Accordingly, it is unnecessary to consider the proper test to be used when considering whether a plan is in compliance with the statutory requirement that districts not be drawn to effect partisan political advantage.

2. In giving effect to the sometimes conflicting demands of the "one township, one commissioner" requirement of the Michigan Constitution, the "one man, one vote" requirement of the federal constitution, and the "as nearly of equal population as is practicable" requirement of the Michigan statutory scheme, the apportionment commission is not required to adhere to some preordained method in devising an apportionment plan.

3. An apportionment plan adopted by a county apportionment commission, if a reasonable choice in the reasoned exercise of judgment, will be sustained even if a plan with a marginally lower population variation might be devised.

4. The fact that the plan adopted by the apportionment commission requires a four-way division of one township, while the alternative plan does not require any more than a two-way division of any township, does not compel rejection of the plan adopted in favor of the .alternative, inasmuch as the plan adopted complies with the statutory guidelines by creating districts that are contiguous, compact, square in shape, reasonably equal in population, and uses township-city combinations only where required to meet the population standards, and there is no showing that the four-way division was intended to give effect to some partisan political advantage.

Petitioners' motion to have the adopted plan declared invalid is denied.

COUNTIES — APPORTIONMENT — CONSTITUTIONAL LAW.

An apportionment plan of county commissioner districts adopted by a county apportionment commission will not be rejected by the Court of Appeals merely because a proposed competing plan may have a marginally smaller population variation between districts, where the plan adopted by the apportionment commission meets the threshold constitutional and statutory standards and represents a reasonable choice in the exercise of judgment (US Const, Am XIV; Const 1963, art 7, § 7; MCL 46.404; MSA 5.359[4]).

*Miller, Canfield, Paddock & Stone* (by *James R. Lancaster, Jr.*), for the petitioners.

*Charles D. Sherman,* Prosecuting Attorney, for the respondent.

### AFTER REMAND

Before: SHEPHERD, P.J., and MICHAEL J. KELLY and FITZGERALD, JJ.

PER CURIAM. This petition for review of a newly adopted apportionment plan for the Board of Commissioners of Clinton County comes before this Court for review pursuant to MCL 46.406; MSA 5.359(6). This Court by our order of January 23, 1992, struck down the plan initially adopted, because one district consisted of several townships, two of which touched only at a corner, holding that the plan violated the contiguity requirement of MCL 46.404(b); MSA 5.359(4)(b).[1] This Court remanded to the Clinton County Apportionment

---

[1] Our order of January 23, 1992, provided, in relevant part:

This Court recognizes that the definition of "contiguous" varies with context. Indeed, there is a split of authority in sister state jurisdictions as to whether parcels of land which touch only at corners are 'contiguous' for homestead exemption and tax assessment purposes. 40 Am Jur 2d, Homestead, § 37, p 141; 40 CJS, Homesteads, § 39, p 210 (1991 rev ed); Anno, 73 ALR 116, 142; *Griffin v Denison Land Co,* 18 ND 246; 119 NW 1041 (1909); *Wilkerson v Harrington,* 115 Miss 637; 76 So 563 (1917). See also *Parsons v Dils,* 172 Ky 774; 189 SW 1158 (1916) and *Baham v Vernon,* 42 So 2d 141 (La App, 1949) (adverse possession). There is similarly a split of authority in the adverse possession context, compare *Baham v Vernon, supra,* with *Parsons v Dils, supra,* as well as with regard to mechanics or other construction liens, *Stewart Concrete & Material Co v James H Stanton Construction Co,* 433 SW2d 76 (Mo App, 1968); *Tallapoosa Lumber Co v Copeland,* 223 Ala 41; 134 So 658; 75 ALR 1325 (1931), and in condemnation situations, *Seckman v Georgia Power Co,* 155 Ga App 204; 270 SE2d 328 (1980).

But in the jurisprudential area which involves determining political boundaries, the courts in sister states, unanimously so far as we are able to determine, consider mere touching at the corners inadequate to meet a contiguity requirement. Annexation cases include *Kane v Paulus,* 41 Or App 455; 599 P2d 1154 (1979); *In re Annexation to the Village of Downers Grove,*

Commission for the presentation of a new plan to this Court within ten days, jurisdiction being retained.

Following adoption of a substitute plan on January 31, 1992, and the filing of new objections by petitioners, this Court granted oral argument. The plan now before this Court divides the county into seven districts, with a population variation from highest to lowest of 3.4 percent, computed according to the method of *New York City Bd of Estimate v Morris,* 489 US 688, 700, n 7; 109 S Ct 1433; 103 L Ed 2d 717 (1989). Petitioners advocate a competing plan, which they presented to the commission on remand, also of seven districts, with a population variation they claim amounts to only 1.7 percent.

Clinton County is an essentially rural county, demographically "dominated" by the City of St. Johns with a population of 7,284 and the City of DeWitt with a population of 3,964. Township populations range from a low of 989 in Bengal Township to 8,614 in DeWitt Township. The total county population is 57,883.

The adopted plan splits three townships: Essex and Bingham Townships are split across two districts each, and DeWitt Township is divided across four different districts. The competing plan advocated by petitioners splits five townships into two districts each.

92 Ill App 3d 682; 48 Ill Dec 261; 416 NE2d 292 (1981); *Big Sioux Twp v Streeter,* 272 NW2d 924 (SD, 1978), *Bryant v City of Charleston,* 295 SC 408; 368 SE2d 899 (1988), and *Village of Niobara v Tichy,* 158 Neb 517; 63 NW2d 867 (1954). Michigan likewise rejects mere cornering as insubstantial. *Owosso Twp v Owosso,* 385 Mich 587; 189 NW2d 421 (1971). We therefore agree with the Florida Supreme Court that, in legislative districting, "cornering" is inadequate to meet the statutory contiguity requirement. *In re Apportionment Law Appearing as Senate Joint Resolution 1E 1982 Special Apportionment Session; Constitutionality Vel Non,* 414 So 2d 1040 (Fla, 1982).

Petitioners claim that the four-way division of DeWitt Township is designed for partisan political purposes, to dilute Democratic Party voting strength. However, at oral argument it was conceded that there is effectively no Democratic political strength throughout the county and, in fact, the adopted plan represents only minor adjustments from the plan adopted in 1982, to account for a two percent increase in population during the decade. Other than petitioners' naked claim, no evidence has been presented to this panel that satisfactorily proves that the division of DeWitt Township accomplishes, in fact, a partisan political advantage, whatever its motivation.

We therefore need not decide whether a motivation test, *City of Mobile v Bolden,* 446 US 55; 100 S Ct 1490; 64 L Ed 2d 47 (1980), or a stricter results test, *Chisom v Roemer,* 501 US —; 111 S Ct 2354; 115 L Ed 2d 348, 364-365 (1991), is appropriate when a petition is filed challenging the legality of a reapportionment plan in light of MCL 46.404(h); MSA 5.359(4)(h). We note, however, that if partisanship can be demographically and cartographically established, it is usually considered intentional for the reasons adduced in *Gaffney v Cummings,* 412 US 735, 749-751; 99 S Ct 2321; 37 L Ed 2d 298 (1973).

Petitioners contend that the interplay between the "one person, one vote" requirement of the Fourteenth Amendment and the "one township, one commissioner" standard of Const 1963, art 7, § 7, requires that a county reapportionment commission start by assigning, within the numerical district limitations of MCL 46.402; MSA 5.359(2), one commissioner to each township in a county, then begin making population adjustments. It is clear to us that, in a county like Clinton County, with a maximum of twenty-one commissioners by

statute, comprised of sixteen townships, with a
total population more than fifty-eight times that of
its least populous township and the largest town-
ship having nine times the population of the
smallest township, such a process, if workable at
all, would be extraordinarily cumbersome. We
agree with respondents that neither the state or
federal constitution nor the holding in *Apportion-
ment of Wayne Co Bd of Comm'rs—1982,* 413 Mich
224; 321 NW2d 615 (1982), either singly or in
combination, compels an apportionment commis-
sion to adhere to any preordained method in devis-
ing an apportionment plan. It is the final plan as
adopted, and not the intermediate steps, with
which this Court must concern itself under MCL
46.406; MSA 5.359(6).

We are likewise of the opinion that *Wayne Co
Apportionment—1982* does not impose a "best
plan" test as advocated by petitioners. Under such
a test, a plan which had been adopted and which
meets threshold constitutional and statutory stan-
dards nevertheless would have to be rejected by
this Court if a competing plan more closely ap-
proaches perfection.

We think the Michigan Supreme Court was fully
aware when it rendered that decision that a "best
plan" review standard would be a prescription for
perpetual litigation. The United States Supreme
Court has recognized that reapportionment by its
nature involves "fundamental choice about the
nature of representation" in what is "primarily a
political and legislative process." *Gaffney v Cum-
mings, supra,* 412 US 747. A reviewing court, in
determining whether a plan "meets the require-
ments of the laws of this state," MCL 46.406; MSA
5.359(6), must allow the political organs to whom
the redistricting task has been delegated some
scope for the "exercise of judgment," and a plan

that represents a "reasonable choice in the reasoned exercise of judgment" must be sustained, *Wayne Co Apportionment—1982, supra,* 413 Mich 264, notwithstanding that a marginally better plan might be devised. Otherwise, the courts would be involved in the never ending process of litigation every time "a resourceful mind hits upon a plan better than the Master's by a fraction of a percentage point." *Gaffney v Cummings, supra,* 412 US 750-751.

Testing the adopted plan by this standard, we note that, for federal constitutional purposes, the "one person, one vote" standard is fully satisfied. The 3.4 percent population deviation is well below the 10 percent considered de minimis for Fourteenth Amendment purposes. *Brown v Thomson,* 462 US 835, 842-843; 103 S Ct 2690; 77 L Ed 2d 214 (1983). And, while MCL 46.404(a); MCL 5.359(4)(a) requires all districts to be "as nearly of equal population as is practicable," the Michigan Supreme Court in *Wayne Co Apportionment— 1982* held that because the standard is statutory, it is subsidiary to the constitutional standard of "one township, one commissioner" of Const 1963, art 7, § 7. Even if we were to accord to the statutory population standard a meaning different from that imposed by the Fourteenth Amendment, the 3.4 percent population divergence computed under the adopted plan nearly two years after the census was taken may be less—and is certainly not significantly more—than the inherent inaccuracies of the census itself, which is, after all, only a "snapshot in time" that, in any event, never completely accurately counts any population. *Gaffney v Cummings, supra,* 412 US 745; see also *Karcher v Daggett,* 462 US 725, 731-732; 103 S Ct 2653; 77 L Ed 2d 133 (1983).

We have already noted that in Clinton County it

would be impossible to assign one commissioner district to each township and then make population adjustments, because such a scheme would require more than fifty-eight commissioner districts in view of the fact that the township with the lowest population would have to have one vote, all districts must be single member districts, MCL 46.404(a); MSA 5.359(4) (a), and the population of the county is more than fifty-eight times that of the smallest township. Because not more than twenty-one districts can be created in a county with between 50,001 and 600,000 persons, MCL 46.402; MSA 5.359(2), any plan must combine some townships with others, and this Court's function is to test the adopted plan by the standards of MCL 46.404(a)-(h); MSA 5.359(4)(a)-(h). *Wayne Co Apportionment—1982, supra.*

In the plan adopted by the Clinton County Apportionment Commission on January 31, 1992, all districts are contiguous. All districts are likewise reasonably compact and square in shape. No township or part thereof has been combined with any city or part thereof for a single district, except where needed to meet the population standard. In this regard, we note that the City of DeWitt is too small to form one district, and so it has been combined with portions of its surrounding township to form a district; however, it was not unnecessarily divided so as to create more than the minimal number of township-city combinations. The same is true for the City of St. Johns.

We come now to the crux of the case before us. Petitioners contend that the adopted plan divides two townships once each and DeWitt Township four times, for a total of six divisions, whereas the competing plan divided five townships once each, for a total of five divisions. We take this opportu-

nity to note that petitioners' counting method is not entirely satisfactory. The number of divisions is perhaps less important than the number of "pieces." Here, petitioners' plan divides five townships into ten pieces, while the adopted plan divides three townships into a total of only eight parts. Even if the situation were reversed, it is not clear that such a marginal difference would exceed the legitimate scope of legislative discretion that this Court must accord to the apportionment commission.

Because there is no claim that precincts have been divided, and we have already rejected a claim that districts were drawn to effect partisan political advantage—particularly in the absence of any indication that the adopted plan unfairly alters the existing allocation of political power vis-a-vis voting strength, thus putting judicial interest "at its lowest ebb," *Gaffney v Cummings, supra,* 412 US 753-754; *Davis v Bandemer,* 478 US 109, 128-129; 106 S Ct 2797; 92 L Ed 2d 85 (1986)—we conclude that the adopted plan "meets the requirements of the laws of this state."

Accordingly, the January 31, 1992, apportionment plan adopted by the Clinton County Apportionment Commission is deemed to be constitutional and otherwise in compliance with the laws of this state, and it therefore becomes the official apportionment plan for the county until the next United States official decennial census figures are available. MCL 46.408; MSA 5.359(8). Petitioner's motion to declare the adopted plan invalid is accordingly denied.