In re APPORTIONMENT OF WAYNE COUNTY—2001

Docket No. 235339. Submitted September 14, 2001, at Lansing. Decided
    October 26, 2001, at 9:20 A.M.

    Shannon G. Price and others petitioned the Court of Appeals for judi-
        cial review of the apportionment plan for Wayne County commis-
        sioner districts adopted by the Wayne County Apportionment Com-
        mission following the 2000 census. The census indicated a county
        population of 2,061,162, which, if equally divided among the fifteen
        commissioner districts, would yield 137,411 people in each district.
        The adopted plan placed 145,952 people in district 11, which is
        8,541 persons more than the ideal, and placed 133,516 people in
        district 7, which is 3,895 persons fewer than the ideal. The 6.22 per-
        cent deviation rate of district 11 and the 2.83 percent deviation rate
        of district 7 yielded a total population divergence or deviation fig-
        ure of 9.05 percent.

        The Court of Appeals held:

        1. The Michigan Supreme Court, in Apportionment of Wayne Co
        Bd of Comm'rs—1982, 413 Mich 224 (1982), has decided that 11.9
        percent is the maximum total population divergence figure allow-
        able and that the range of divergence shall be 94.05 percent to
        105.95 percent. In this case the 94.05 percent to 105.95 percent
        range translates into population limits of 129,235 people and
        145,587 people. The 145,952 population number in district 11
        exceeds the maximum limit by 365, thus making the plan adopted
        in this case violate the requirements of the law of this state, MCL
        45.405(5). The apportionment plan adopted in this case must be
        vacated and the matter must be remanded to the respondent appor-
        tionment commission for the adoption of a plan that meets the
        requirements of the laws of this state.

        2. The Court of Appeals cannot direct the respondent apportion-
        ment commission to adopt the apportionment plan proposed by the
        petitioners. The apportionment process is primarily a political and
        legislative process and a reviewing court should allow the political
        institutions latitude for exercising their judgment.

        Apportionment plan vacated and matter remanded.

COUNTIES — CHARTER COUNTIES — COMMISSIONER DISTRICTS — APPORTIONMENT.
An apportionment plan for county commissioner districts in a charter county must have a total population divergence or deviation rate that is no greater than 11.9 percent and districts whose divergence rates fall within the range of 94.05 percent to 105.95 percent in order to satisfy a requirement under state law that districts be as equal in population as practicable (MCL 45.505[2]).

*Foster, Swift, Collins & Smith, P.C.* (by *Eric E. Doster*), for the petitioners.

*Timothy Downs* and *Gene A. Farber*, for the respondent.

Before: WILDER, P.J., and COLLINS and K. F. KELLY, JJ.

PER CURIAM. Petitioners filed this original action pursuant to MCL 45.505(5), seeking to set aside an apportionment plan adopted by the Wayne County Apportionment Commission (respondent) on June 8, 2001,[1] and further seeking an order compelling respondent on remand to adopt a plan known as the Price plan. The Price plan was submitted to respondent on June 8, 2001, by petitioner Shannon G. Price before adoption of the plan currently being challenged. Pursuant to MCR 7.206(D)(3) we grant peremptory relief, vacate the apportionment plan adopted by respondent, and remand for adoption of a new plan.

Wayne County is a charter county, as authorized by MCL 45.501 *et seq.*, 1966 PA 293. Under the county charter there are fifteen county commissioner districts. Following publication of the 2000 census figures, respondent met on several occasions and considered several apportionment plans. At a meeting

---

[1] The plan was adopted within sixty days of the latest official census figures becoming available. MCL 45.505(6)

on June 8, 2001, respondent considered the Price plan, the Montgomery plan, and a revised staff plan. By a 3-1 vote the respondent adopted the Montgomery plan. Among other things, respondent considered the population divergence of the plans, existing political boundaries, minority voting, distinct neighborhoods and communities, and a planned new housing project.

The adopted (Montgomery) plan has a total population divergence of 9.05 percent.[2] The adopted plan divides no townships. Only the cities of Detroit and Livonia are divided under the plan. Those are the same two municipalities divided by the previous, 1992 plan.

According to the 2000 census, Wayne County has a population of 2,061,162 people. Fifteen districts with perfectly equal population would each have 137,411 people. Under the adopted plan district 11 had the greatest number of people, 145,952, or 8,541 persons more than an ideal district, while district 7 had the smallest number of people, 133,516 people, or 3,895 fewer than the ideal. District 11 had a deviation of 6.22 percent, and district 7 had a deviation of 2.83 percent. Combining those two deviations yields a maximum deviation of 9.05 percent.

---

[2] The total population divergence or deviation is calculated by adding the percentage deviations from perfect equality of the districts with the highest deviations above and below perfect equality. See *Apportionment of Wayne Co Bd of Comm'rs—1982*, 413 Mich 224, 242; 321 NW2d 615 (1982), adopting the 11.9 percent range of divergence allowed in *ABATE v Mundt*, 403 US 182; 91 S Ct 1904, 29 L Ed 2d 399 (1971); *New York City Bd of Estimate v Morris*, 489 US 688, 700, n 7; 109 S Ct 1433; 103 L Ed 2d 717 (1989); *In re Apportionment of Clinton Co—1991 (After Remand)*, 193 Mich App 231, 234; 483 NW2d 448 (1992).

MCL 45.505(5) requires this Court "to determine if the plan meets the requirements of the law of this state." *Apportionment of Wayne Co Bd of Comm'rs— 1982*, 413 Mich 224, 265; 321 NW2d 615 (1982). The apportionment process is "primarily a political and legislative process," and a reviewing court should allow the political institutions latitude for exercising their judgment. *In re Apportionment of Clinton Co— 1991 (After Remand)*, 193 Mich App 231, 236; 483 NW2d 448 (1992), quoting from *Gaffney v Cummings*, 412 US 735, 747; 99 S Ct 2321; 37 L Ed 2d 298 (1973). "A reasonable choice in the reasoned exercise of judgment should ordinarily be sustained." *Wayne Co Apportionment—1982*, *supra* at 264; *Clinton Co Apportionment—1991 (After Remand)*, *supra* at 237. This Court's review is not to determine what is the "best plan." *Id.* at 236.

Although the adopted plan's 9.05 percent population divergence is comfortably less than the 11.9 percent allowed by *ABATE v Mundt*, 403 US 182; 91 S Ct 1904; 29 L Ed 2d 399 (1971), which was adopted by our Supreme Court in *Wayne Co Apportionment— 1982* as the "range of allowable divergence under the federal constitution," 413 Mich 263, the population of district 11 is 106.2 percent of the ideal. This deviation is greater than that allowed by the requirement that commissioner districts be "as equal in population as practicable." MCL 45.505(2).

*Wayne Co Apportionment—1982*[3] not only concluded that 11.9 percent was the allowable divergence

---

[3] *Wayne County Apportionment—1982* recognized that the criteria for county election districts with charter counties, MCL 45.501 *et seq.*; 1966 PA 293, and ordinary counties, MCL 46.401 *et seq.*; 1966 PA 261, are essentially the same. See 413 Mich 236, 256.

(on the basis of *ABATE v Mundt*), but also described that range of divergence as "94.05% to 105.95%." 413 Mich 256-263. These percentages represent an equidistant range of 5.95 percent above and below perfect equality. We note that the Supreme Court described this equidistant range parenthetically and without discussion and that *ABATE v Mundt* did not adhere to such a range.[4] In addition, we find no express statutory language compelling an equidistant range. However, we cannot ignore the clear language and direction of our Supreme Court. The Court similarly referred to an equidistant range in the legislative apportionment case of *In re Apportionment of State Legislature—1982*, 413 Mich 96, 141-142; 321 NW2d 565 (1982). We therefore conclude that for respondent's apportionment plan to be valid it must not only satisfy the 11.9 percent divergence figure, but the divergence of each district must fall within the range of 94.05 percent to 105.95 percent. In other words, no district can depart from perfect equality by more than 5.95 percent.[5]

In the instant case, a range of 94.05 percent to 105.95 percent translates into population limits of 129,235 people and 145,587 people. District 11's population of 145,952 people exceeds the maximum limit by 365 people. Therefore, the adopted plan cannot be sustained. *Wayne Co Apportionment—1982, supra* at 256, 263.

Petitioners also contend that in the event this Court invalidates the apportionment plan adopted by re-

---

[4] The deviations in *ABATE v Mundt* were 4.8 percent and 7.1 percent. See 413 Mich 242.

[5] If all districts satisfy the 5.95 percent requirement, mathematically the plan will satisfy the 11.9 percent requirement.

spondent this Court should direct respondent on remand to adopt the Price plan. We disagree. Because reapportionment includes "fundamental choice about the nature of representation" in what is "primarily a political and legislative process . . . some scope for the 'exercise of judgment' " by respondent must be provided. *In re Apportionment of Clinton Co—1991 (After Remand), supra* at 236.

Accordingly the apportionment plan adopted by the Wayne County Apportionment Commission on June 8, 2001, is vacated as not being in compliance with the laws of this state. This matter is remanded to the apportionment commission to adopt, within thirty days of the date of this opinion, an apportionment plan that meets the requirements of the laws of this state. Upon adopting a plan on remand, the apportionment commission shall file a copy of the plan with the county clerk and with the clerk of this Court for further review. Any registered voter of the county may seek judicial review of the plan. MCL 45.505(5).

This Court retains jurisdiction.