*In re* FLURY ESTATE

FLURY v FLURY

Docket No. 170676. Submitted April 17, 1996, at Lansing. Decided August 9, 1996, at 9:00 A.M.

Gerald and Elizabeth Flury filed a petition in the Macomb County Probate Court seeking to have admitted to probate the alleged lost holographic will of Gloria Flury, Gerald's sister, who died leaving a sizeable estate. Marvin Flury, the father of Gerald and Gloria, contested the action and also sought a determination regarding the validity of an assignment he executed that assigned his interest in his daughter's estate to Gerald, who is the attorney who drafted the assignment. A jury found that a holographic will existed, that it was validly written, and that Gerald was the sole heir. The jury also found that the assignment of interest was made without consideration, but was not the result of undue influence and was not executed as a result of actual or constructive fraud. The probate court, James F. Nowicki, J., entered a judgment consistent with the findings of the jury. Marvin appealed from the order admitting the will to probate and the denial of his motion for judgment notwithstanding the verdict. Gerald and Elizabeth cross appealed, alleging that the probate court erred in submitting to the jury the issue regarding the validity of the assignment of interest.

The Court of Appeals *held*:

1. The missing document does not qualify for admission to probate. There was no evidence that the decedent drafted and executed the will in accordance with MCL 700.123; MSA 27.5123, the statute creating the right to make a testamentary disposition by a holographic will. Because there was no testimony regarding the execution of the alleged will, MCL 700.149(1); MSA 27.5149(1), which provides that an alleged lost will shall not be admitted to probate unless its execution and its contents are established by at least two reputable witnesses, was not satisfied.

2. MCL 700.123; MSA 27.5123 and MCL 700.149(1); MSA 27.5149 (1) provide that a holographic will must be dated and in the handwriting of and signed at the end by the testator and that two witnesses must be able to testify regarding the execution of a lost will. The petitioners could not show that the will was signed, dated, and

in the handwriting of the decedent. The alleged holographic will should not have been admitted. The probate court abused its discretion in denying Marvin's motion for a directed verdict.

3. Evidence of Marvin's poor relationship with his family over many years was irrelevant and created undue prejudice against Marvin. The evidence should not have been admitted.

4. Marvin Flury may have been the victim of overreaching by Gerald Flury with regard to the execution of the assignment of Marvin's interest in the decedent's estate to Gerald, who drafted the document. Undue influence resulting from the improper admission of evidence regarding Marvin's poor relationship with his family over many years likely tainted the jury's consideration of the assignment issue to Marvin's detriment. The decision of the probate court regarding this issue must be reversed.

Reversed and remanded.

WILLS — HOLOGRAPHIC WILLS — LOST HOLOGRAPHIC WILLS — ADMISSION TO PROBATE.

  A holographic will is valid when the material provisions are in the handwriting of the testator, it is dated, and it is signed at the end by the testator; an alleged lost holographic will may not be admitted to probate unless its execution and its contents are established by at least two reputable witnesses (MCL 700.123, 700.149[1]; MSA 27.5123, 27.5149[1]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*), for Gerald and Elizabeth Flury.

*Wilson, Lawler & Lett* (by *R. David Wilson* and *Steven T. Lett*), for Marvin Flury.

Before: MICHAEL J. KELLY, P.J., and BANDSTRA and S. B. MILLER,* JJ.

PER CURIAM. This is a will contest case presenting an issue of first impression regarding the statutory preconditions for establishing the existence and contents of a lost will in Michigan.

Marvin Flury (hereinafter respondent) appeals from a jury verdict admitting a will to probate (on Septem-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ber 15, 1993) and the denial of his motion for judgment notwithstanding the verdict entered on December 1, 1993. Gerald and Elizabeth Flury (hereinafter petitioners) cross appeal from the probate court's submission to the jury of the issue of the validity of an assignment of interest executed by respondent to petitioner Gerald Flury.

Respondent is the father of petitioner Gerald Flury and the decedent, Gloria Flury, who died June 13, 1991, leaving a sizeable estate. Petitioners contend that Gloria had written a holographic will leaving everything to Gerald. When the will turned up missing, Gerald, an attorney, visited his elderly estranged father and obtained, among other documents, an executed assignment of his father's interest in Gloria's estate.[1] Admission of the lost will was sought by petitioners and contested by respondent. A trial by jury was conducted over eight days in the Macomb County Probate Court at which Gerald, the proponent of the lost will, prevailed. The jury found that a holographic will existed, that it was validly written, and that Gerald was the sole heir. The jury also found that the assignment from respondent to Gerald was without consideration, but was not the result of undue influence and was not executed as a result of actual or constructive fraud. These appeals followed.

The statute creating the right to make a testamentary disposition by a holographic will states:

> A will which does not comply with section 122 [MCL 700.122; MSA 27.5122] is valid as a holographic will, whether or not witnessed, if it is dated, if the signature

---

[1] The assignment was intended to assure intestate succession if the "lost will" was rejected.

appears at the end of the will and the material provisions are in the handwriting of the testator. [MCL 700.123; MSA 27.5123.]

In this case, the will was not found and the parties agree that the issue whether the will can be established for admission to probate is governed by MCL 700.149(1); MSA 27.5149(1):

When it is proposed to establish an allegedly lost, destroyed, or suppressed will, the petition filed in the court praying for the admission of such an alleged will to probate shall contain a full and complete statement of the contents of the alleged will to the extent the contents can be ascertained and shall disclose the names of the subscribing witnesses, if known, and if living, their place of residence, together with the names and residences of all known persons who have personal knowledge of the execution of the alleged will and its contents. An alleged will shall not be admitted to probate unless its execution and its contents are established by at least 2 reputable witnesses.

I

The first question we address is whether the probate court erred in failing to grant summary disposition denying the admission of the purported holographic will to probate.

We find that the evidence, when viewed in a light most favorable to the nonmovants, showed that (1) the decedent was an organized person, (2) the decedent asked Gerald for information regarding the drafting of a holographic will, (3) newspaper articles addressing holographic wills were found in her apartment, (4) the decedent told two witnesses that she had a will, (5) the decedent told two witnesses that she left all her property to Gerald, and (6) Arlene

Murray told Gerald that she, Arlene, had the decedent's will in her possession.

Whether the evidence favorable to petitioner may be taken to state the contents of the will "to the extent the contents can be described," is not determinative. The critical obstacle is that there was no evidence that Gloria drafted and executed a will in accordance with MCL 700.123; MSA 27.5123. There was no evidence that anyone saw Gloria sign the will; the only evidence that a will was actually seen by anybody was the hearsay statement made by Gerald that Arlene Murray told him that she, Arlene, had Gloria's will. Arlene denied making that statement and denied having seen the will. Hence, there was no testimony regarding its execution. MCL 700.149(1); MSA 27.5149(1) was not satisfied.

A holographic will is valid when (1) the material provisions are in the handwriting of the testator, (2) it is dated, and (3) it is signed at the end. MCL 700.123; MSA 27.5123. While it is correct that the contents need only be proved to the extent possible, that is not the first step when the instrument is not available. The first step is the formality of proving the execution by the testimony of two witnesses. That is a statutory necessity. The missing document in question does not qualify for admission to probate.

The right to make a disposition of property by means of a will is entirely statutory. *In re Sutherby Estate*, 110 Mich App 175, 177; 312 NW2d 200 (1981). The first criterion in determining legislative intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the plain and ordinary meaning of the language is clear, judicial construction is nor-

mally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). We believe that no construction is necessary here.

The language of the statutes at issue is clear and does not require further interpretation: the holographic will must be dated and in the handwriting of and signed at the end by the testator. Two witnesses must be able to testify regarding the execution of a lost will. There must be two subscribing witnesses although their identities need not be known. Because petitioners could not show that the will was signed, dated, and in the handwriting of Gloria, the alleged holographic will should not have been admitted. Petitioners could show, at best, that Gloria was capable of properly drafting a holographic will, but cannot show that she actually did so. Petitioners could not therefore comport with the statutory requirement to establish the execution of the alleged will. MCL 700.149; MSA 27.5149. The probate court abused its discretion in denying respondent's motion for a directed verdict.

II

We next examine the propriety of admitting certain evidence.

At trial, evidence was admitted, over the objection of respondent, to show that respondent was estranged from his family, especially his daughter Gloria. It was petitioners' hypothesis that Gloria did not want any of her worldly goods to go to her father and she would have executed a will, holographic if necessary, to accomplish this end. The court allowed, under the adverse party statute, cross-examination of

respondent relating to his relationship with his ex-wife, Gloria's mother. Her divorce action was scrutinized, with emphasis on temporary injunctions she obtained, all of which occurred before her death in 1967. The divorce action pleadings were introduced and admitted into evidence although respondent denied knowledge of a divorce and the record does not disclose a proof of service of the pleadings.

Further testimony on cross-examination of respondent under the statute was also allowed to show that after the death of Gloria's mother, respondent moved from the area and had two failed marriages and other failed relationships with women from other states. There was no question that respondent had little, if any, contact with his two children, Gerald and Gloria, over the last twenty years. On the day of trial, respondent testified he was eighty-two years of age (born March 15, 1911). Respondent learned of his daughter's death from the newspaper.

The decision whether to admit evidence is within the discretion of the trial court and is subject to review on appeal for abuse of discretion. *Price v Long Realty, Inc,* 199 Mich App 461, 466; 502 NW2d 337 (1993). All relevant evidence is generally admissible. MRE 402; *People v Bahoda,* 448 Mich 261; 531 NW2d 659 (1995). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice exists when there is a tendency that the evidence will be given undue or preemptive weight by the jury. *People v Harvey,* 167 Mich App 734; 423 NW2d 335 (1988).

It is apparent to this Court that any probative value the evidence of respondent's poor relationship with his family over many years may have had was solely

related to the intent of Gloria Flury, whose purported holographic will should not have been considered. See section I, *supra*. With that will properly removed from the case, this evidence was irrelevant and created undue prejudice against respondent in the minds of the jurors. The evidence should not have been admitted.

III

Respondent next claims that the verdict of the jury regarding the execution of the assignment of respondent's interest in the estate of his daughter to his son, the drafter of the document, was against the great weight of the evidence. Gerald testified that after Gloria's death on June 13, 1991, a search was made of her apartment for a will, but the search did not produce a will. On June 24, 1991, Gerald called his father at his father's home in Haslett, Michigan, to discuss the estate and suggest that the respondent have a durable power of attorney for health care. He also advised respondent that Gloria's will named him, Gerald, as the beneficiary. Gerald did not tell his father that the will could not be found or that he had not prepared a will for his sister. Respondent also was not told of the size of his daughter's estate. The assignment was prepared without respondent being consulted and the execution of the documents was effected without discussion regarding their legal significance. The witness present testified that the pages were turned by Gerald to places where respondent was instructed to make his X without giving respondent an opportunity to read the pages and that the pages were not read to respondent by Gerald or the witness. The witness further testified that respondent

was in very poor health and "shook real bad. He couldn't focus his eyes a lot. He couldn't hardly focus. He couldn't; he was very sick." Respondent testified that he was not given a chance to read any of the documents.

This Court believes that respondent may have been the victim of overreaching by petitioner Gerald Flury. While it is true that respondent knew that his daughter's estate was substantial, he did not know that a will had not been found, and one may not have been executed, leaving everything to her brother Gerald. He testified he did not know that he was signing a waiver of his interest in his daughter's estate or that he was *revoking his own will*[2] when he signed the documents presented by his son Gerald. He testified he believed the documents would provide authority for Gerald to give medical authorization for respondent's treatment in the event of illness. Nonetheless, we are hesitant to overturn the jury's findings of fact with respect to the assignment. Those findings were based on determinations regarding the credibility of various witnesses at trial, whose demeanor and veracity we cannot judge on the written record. *People v DeLisle*, 202 Mich App 658, 660, 662; 509 NW2d 885 (1993).

We conclude, however, that undue influence resulting from the improper introduction of the evidence

---

[2] Gerald Flury admitted on cross-examination that he prepared four documents and had them executed by his father all at the same time:

(1) a power of attorney,
(2) a medical power of attorney,
(3) a revocation of the father's existing will, and
(4) an assignment of respondent's interest in his daughter's estate.

regarding respondent's poor relationship with his family over many years (see issue II, *supra*) likely tainted the jury's consideration of the assignment issue to respondent's detriment. Accordingly, we reverse the decision of the probate court and remand for a new trial with the issues and evidence properly limited in accordance with this opinion.

Reversed and remanded for a new trial. The award of attorney fees for petitioners in the lower court is reversed.