WALLAD v ACCESS BIDCO, INC

Docket No. 207585. Submitted May 5, 1999, at Lansing. Decided June 25, 1999, at 9:00 A.M.

Michael L. Wallad brought an action in the Ingham Circuit Court against Access BIDCO, Inc. (Access), and others, alleging a shareholder derivative claim and breach of an employment contract. The court, Carolyn Stell, J., granted summary disposition in favor of the defendants, granted defendant Capitol Bancorp, Ltd. (Capitol), sanctions against both the plaintiff and his counsel, and granted defendants Joseph D. Reid and Lee W. Hendrickson sanctions against the plaintiff. The plaintiff appealed.

The Court of Appeals *held*:

1. The court properly granted summary disposition with regard to the claims against Access on the basis that the plaintiff, a member of the board of directors of Access, was estopped from challenging transactions that he approved at board meetings. A shareholder such as the plaintiff who acquiesces or participates in a corporate transaction may not later challenge the validity of the transaction in court.

2. The plaintiff's failure to object and vote against the alleged improper transactions is not excused on the basis that he feared the termination of his employment with Access. The plaintiff breached his fiduciary duty to Access' shareholders if he failed to act for the benefit of Access because of his personal interest in his job.

3. Although one of the challenged transactions occurred after the plaintiff's employment with Access ceased, summary disposition was properly granted with regard to that claim. The plaintiff was not entitled to sue to enforce the claim, which alleged violation of the Michigan BIDCO Act, MCL 487.1101 *et seq.*; MSA 23.1189(101) *et seq.*, because there is a public mechanism to address the allegations at issue and a private party cannot maintain an action to enforce a statute if the statute sets up a public enforcement mechanism and creates new rights that did not exist at common law.

4. Summary disposition was properly granted in favor of Capitol because the plaintiff was estopped from vindicating the corporate interests of Access through a suit against Access itself and was

likewise estopped from vindicating the corporate interests of Access through an action against Capitol involving claims concerning the same allegations and facts as the claims against Access.

    5. The court erred in granting summary disposition with regard to the claim alleging breach of the plaintiff's employment contract. A question of fact existed whether the plaintiff's employment had been terminated or he had resigned, and, if his employment was terminated, was that termination in violation of the employment contract. This part of the court's order must be reversed and the matter must be reconsidered on remand. On remand, the court must also resolve the issue regarding Access' right to repurchase stock from the plaintiff.

    6. The plaintiff is entitled to the shares of stock he owned in defendant Onset BIDCO, Inc.

    7. The plaintiff's complaint, including the allegations against Capitol, Reid, and Hendrickson, did not rise to the level of frivolity that requires an award of sanctions. The court's award of sanctions must be reversed.

    Affirmed in part, reversed in part, and remanded.

1. CORPORATIONS — ACTIONS — SHAREHOLDERS — DIRECTORS.

    A shareholder who acquiesces or participates in a corporate transaction may not later challenge the validity of the transaction in court; a shareholder of a corporation who is also a member of the board of directors of that corporation and did not object to or vote against a transaction approved at a meeting attended may maintain an action by the shareholder challenging the transaction if it can be demonstrated that complaining to the directors or requesting them to act differently would have been futile.

2. CORPORATIONS — DIRECTORS — FIDUCIARY DUTIES.

    Directors of a corporation owe fiduciary duties to stockholders and must act in good faith for the benefit of the corporation.

3. WORDS AND PHRASES — FIDUCIARY DUTIES.

    A "fiduciary duty" is a duty to act for someone else's benefit while subordinating the fiduciary's personal interests to that of the other person.

4. STATUTES — ACTIONS — ENFORCEMENT OF STATUTES — PRIVATE PARTIES.

    A private party cannot maintain an action to enforce a statute if the statute sets up a public enforcement mechanism and creates new rights that did not exist at common law.

5. STATUTES — MICHIGAN BIDCO ACT.

The Michigan BIDCO Act was designed to promote economic development by encouraging the formation of a new type of private institution; the act provides a public enforcement mechanism to address violations of the act and enforce compliance (MCL 487.1101 *et seq.*; MSA 23.1189[101] *et seq.*).

*Charles F. Glass* and *Wulfmeier & Ottenwess, PLC* (by *Daniel J. Dulworth*), for the plaintiff.

*Abood, Abood & Rheaume, P.C.* (by *William E. Rheaume*), for the defendants.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

PER CURIAM. The trial court granted summary disposition to defendants with regard to plaintiff's claims, which included a shareholder derivative claim and a breach of employment contract claim. Subsequently, the trial court granted defendant Capitol Bancorp, Ltd. (Capitol), sanctions against both plaintiff and his counsel, and granted defendants Joseph Reid and Lee Hendrickson sanctions against plaintiff. Plaintiff appeals as of right, and we affirm in part, reverse in part, and remand for further proceedings.

Plaintiff first argues that the trial court should not have granted summary disposition of his claims against defendant Access BIDCO, Inc. (Access). We disagree. The trial court properly held that plaintiff, a member of Access' board of directors, was estopped from challenging transactions that he approved at meetings of the board of directors. A shareholder who acquiesces or participates in a corporate transaction may not later challenge the validity of the transaction in court. *Burch v Norton Hotel Co*, 261 Mich 311; 246 NW 131 (1933). Plaintiff was a minority shareholder and a director of Access during all but

one of the transactions he now challenges, and he conceded that he voted in favor of provisions that allowed the transactions to occur, including the amount of salaries paid and the bonus pool. Although plaintiff contends that he objected to the practices at issue when he spoke privately to defendants Reid and Hendrickson, the *Burch* Court indicated that even if objections are made outside stockholder or directors' meetings, a plaintiff who has not objected during such meetings has no judicial recourse. *Id.* at 314. Plaintiff never raised his concerns at board meetings or requested that the directors act differently with regard to the alleged improper transactions.[1]

We do not agree that plaintiff should be excused for failing to object to or vote against the proposals by which the transactions were effected. Plaintiff claims that he acquiesced in Reid's proposals under threat of termination of plaintiff's employment. In other words, his employment would have been terminated if he had openly opposed those proposals at the board meetings. He argues that because he only acquiesced under threat of losing his job, he should not now be precluded from bringing his claims. While we agree that a plaintiff may maintain an action if he demonstrates that complaining to the directors or requesting them to act differently would have been futile, *id.* at 314-315, plaintiff here did not demonstrate that it would have been useless to challenge the actions at issue. Moreover, the directors of a corporation owe fiduciary duties to stockholders and are bound to act in good faith for the benefit of the cor-

---

[1] In rendering our opinion that plaintiff was not able to maintain his action, we express no opinion regarding the validity, legality, or propriety of the actions about which plaintiff complains.

poration. *Production Finishing Corp v Shields*, 158 Mich App 479, 486; 405 NW2d 171 (1987); *Wagner Electric Corp v Hydraulic Brake Co*, 269 Mich 560, 564; 257 NW 884 (1934). A "fiduciary duty" is "[a] duty to act for someone else's benefit, *while subordinating one's personal interests to that of the other* person." Black's Law Dictionary (6th ed) (emphasis added). If plaintiff failed to act for the benefit of Access because of his personal interest in his job, he himself has breached his fiduciary duty to Access' shareholders. We will not reward plaintiff for failing to uphold his fiduciary duties in order to protect his personal interest, i.e., his job. His inaction at the board meetings is not excusable.

Next, we acknowledge that one of the transactions that plaintiff challenges, the use of Access money to finance defendant Access Venture Fund, L.P., apparently transpired after plaintiff's employment with Access ceased. Thus, our prior ruling with regard to plaintiff's claims against Access does not extend to this particular transaction. Nevertheless, we also conclude that summary disposition was appropriate with regard to this transaction. Plaintiff claims that the Access Venture Fund transaction violated the Michigan BIDCO Act, MCL 487.1101 *et seq.*; MSA 23.1189(101) *et seq.*, which provides that "[a] licensee shall not provide, directly or indirectly, financing assistance to an associate of the licensee." MCL 487.1809; MSA 23.1189(809). In *Claire-Ann Co v Christenson & Christenson, Inc*, 223 Mich App 25; 566 NW2d 4 (1997), this Court reiterated that a private party cannot maintain an action to enforce a statute if the statute sets up a public enforcement mechanism and creates new rights that did not exist

at common law. *Id.* at 30-31. The BIDCO Act was designed to "[p]romote economic development by encouraging the formation of . . . a *new* type of private institution . . . ." MCL 487.1102(a); MSA 23.1189(102)(a) (emphasis added). It intended to set up its own methods of enforcement, MCL 487.1102(b) and (c); MSA 23.1189(102)(b) and (c), and, in fact, did so. See MCL 487.1701; MSA 23.1189(701) to MCL 487.1719; MSA 23.1189(719). The enforcement provisions allow the commissioner of the Financial Institutions Bureau of the Department of Consumer and Industry Services to "bring an action in the name of the people of this state" to enjoin violations of the act and enforce compliance. MCL 487.1701; MSA 23.1189(701). The act further prescribes numerous other actions that may be taken by the commissioner upon finding violations of the act. Because there is a public enforcement mechanism to address the allegations at issue, plaintiff is not entitled to sue to enforce the BIDCO statute.

We also note that plaintiff argues that because discovery was not complete, the trial court's grant of summary disposition was premature and improper. This argument was not raised and decided by the trial court and, therefore, we will not review it. *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1992).

Plaintiff next argues that the trial court should not have granted summary disposition in favor of Capitol. We disagree. Because plaintiff was estopped from vindicating the corporate interests of Access through a suit against Access itself, he was likewise estopped from vindicating the corporate interests of Access through an action against Capitol. The claims

asserted against Capitol involve the same allegations and facts as some of the claims alleged against Access, which claims plaintiff was unable to maintain. The purpose of estoppel in the context of a derivative shareholder suit is to prevent a shareholder from challenging transactions in which the shareholder participated. See *Burch, supra* at 314. Because we have held that plaintiff was not entitled to relief against Access, we hold that plaintiff is also barred from challenging those same transactions through his claims against Capitol. Plaintiff may not pursue claims based on conduct and transactions that he approved. In addition, we note that plaintiff could not have been attempting to sue Capitol as a shareholder because there was no evidence that he held shares in Capitol. Finally, we also note that plaintiff argues on appeal that he should have been allowed to amend his complaint with regard to Capitol. Plaintiff did not raise this issue in his questions presented and review is therefore inappropriate. *Weiss v Hodge (After Remand)*, 223 Mich App 620, 634; 567 NW2d 468 (1997).

Plaintiff next argues that the trial court erred in granting summary disposition of his breach of employment contract claim. We agree. There was a question of fact with regard to whether plaintiff's employment had been terminated or he had resigned, and, if his employment had been terminated, whether that termination was in violation of his employment contract.

Plaintiff's employment contract stated that "[t]he Employee's employment . . . may be terminated at any time by the board of directors of Access, with or without cause . . . ." The term "cause" is exclusively

defined in the contract. Plaintiff testified during his deposition that Reid "made it clear that he didn't want me working at the BIDCO any longer and I agreed with that." He also stated, "I agreed that if [Reid] doesn't want me there, it's not working out, yeah, it's a good idea to part ways." In a subsequent affidavit, plaintiff claimed:

> 2. That to date, [plaintiff] has not resigned from Access BIDCO, nor has [plaintiff] been terminated in accordance with the terms of his employment agreement.
>
> *    *    *
>
> 18. That following his repeated dissent and complaint, Joseph Reid told [plaintiff] that he was "50% of the way to firing you . . . ." [Plaintiff] indicated that he would not change his course of dissent and criticism. Reid directed that he negotiate with Attorney Lasky and enter into a separation agreement. Such agreement was never achieved. Two days later, Hendrickson asked for [plaintiff's] keys to the Access office and told him that he did not have to come in again. Hendrickson caused him to be locked out of his telephone system, including voice mail. About one week later, [plaintiff] asked for and was granted permission to remove personal items from his desk while being watched by Hendrickson.
>
> 19. That [plaintiff] made repeated inquiry as to his status at Access and Onset because he knew of his ongoing responsibilities as a shareholder and director. At no time was [plaintiff] informed that he had been terminated nor had he resigned.
>
> 20. That all payments received by [plaintiff] after being asked to leave the premises of Access BIDCO were salary since he has not resigned or entered into a severance agreement with the Defendant, Access BIDCO, nor had he been terminated by action of the Board of Directors as required by his Employment Agreement.

Hendrickson testified that he never saw a resignation from plaintiff and that plaintiff had indicated that he was not sure if he had resigned.

Defendants produced a letter sent by Access' attorney, also a member of Access' board, to plaintiff, that purported to clarify the board's position regarding plaintiff's "separation" from employment. In the letter, plaintiff was offered six months of salary as severance pay and the issues of health insurance, vacation pay, and plaintiff's Access stock were discussed. In addition, the letter requested that plaintiff draft a letter of resignation. Defendants also produced the affidavit of Hendrickson, which indicated that plaintiff "has been paid his accumulated vacation time and has been paid the equivalent of six month's salary, which payments have been made by check and have been negotiated by" plaintiff.

After reviewing the record, the trial court determined that on the basis of plaintiff's deposition testimony and "undisputed corporate documents" in the record, there was no genuine issue of material fact that plaintiff was an at-will employee, that plaintiff and Reid mutually negotiated a resignation by plaintiff with severance pay, and that plaintiff received six months of pay and his accumulated vacation pay. Our review de novo of the record leads to the opposite conclusion. Plaintiff averred that he never entered into a severance agreement. Moreover, plaintiff averred that he never resigned and that he was never informed that the board had terminated his employment. His deposition testimony that he and Reid had agreed that they should part ways does not indicate whether a resignation was negotiated or expected, or whether Reid planned on terminating or did terminate

plaintiff's employment. Defendants did not produce unequivocal evidence that plaintiff resigned or approved the proposed severance agreement.

Summary disposition may be granted under MCR 2.116(C)(10) when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

> A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

Viewing the facts in the light most favorable to plaintiff, we find that there was a genuine issue of material fact regarding plaintiff's breach of contract claim, specifically whether he had resigned and accepted a severance package or whether his employment had been terminated pursuant to the terms of his contract.

In making our ruling, we note that we also disagree with the trial court that plaintiff's affidavit contradicted his deposition testimony. As previously indicated, while plaintiff acknowledged during his deposition that he and Reid agreed that they were going to end up parting ways, plaintiff never stated unequivocally that he had resigned or that he had reached a severance agreement. Plaintiff's affidavit was more specific than his deposition testimony.[2] While it clarified and expanded that testimony, it does not directly contradict it.

---

[2] We note that our review of the deposition testimony is limited to the few select pages of testimony utilized by the parties in the trial court. The entire deposition transcripts were not filed in the trial court.

Plaintiff also contends that because a genuine issue existed with regard to his contract claim, the trial court's ruling with regard to plaintiff's Access stock was improper. We agree. Access' right to repurchase stock from plaintiff was conditioned on the vesting provisions in his employment contract and, apparently, on how the separation occurred. Because of our holding with regard to plaintiff's claim for breach of his employment contract, we are unable to resolve the issue with regard to the vesting of plaintiff's stock. This issue will need to be resolved on remand after a determination is made regarding whether and when plaintiff resigned or his employment was terminated.

Plaintiff also argues that the trial court failed to order defendants to convey to plaintiff shares he owned in defendant Onset BIDCO, Inc. Defendants concede that plaintiff is entitled to the Onset BIDCO shares. The trial court ruled that "the Onset issue has been adequately addressed by the concession." We agree. Plaintiff is entitled to the shares.

Finally, plaintiff argues that the trial court erred in awarding sanctions. We agree. The trial court determined that plaintiff's complaint was frivolous. While we agree that plaintiff was not entitled to relief pertaining to his allegations against Capitol, we do not find that the complaint, including the allegations against Capitol and defendants Reid and Hendrickson, rose to the level of frivolity that requires an award of sanctions; there was no showing or finding that the complaint was made to harass, embarrass, or injure any of the defendants or that plaintiff had no reasonable basis to believe that the facts supporting his claim were false, or that his position was devoid of argua-

ble legal merit. *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 266; 548 NW2d 698 (1996); MCL 600.2591; MSA 27A.2591.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.